UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 2:24-cr-00176-JNW |
| Plaintiff, | ORDER |
| v. | |
| DARRYL LAMONT YOUNG and AQEELAH NGIESHA WILLIAMS, | |
| Defendants. | |

## 1.  INTRODUCTION

Defendant Darryl Young, who is charged with running a fraud scheme that targeted seriously ill veterans, has filed a series of pro se motions to dismiss the Superseding Indictment, to suppress recordings of his jail calls, and to reopen his detention. He also asks the Court to adopt a report and recommendation that he drafted himself. The Court has reviewed each motion, construing each filing liberally, and the Government's omnibus response. None of Young's arguments have merit. Accordingly, the Court DENIES the motions, Dkt. Nos. 127, 128, 129, 131, 133, 134, 137, 138, 162, 164, and DECLINES to adopt his proposed report and recommendation, Dkt. No. 136.

ORDER - 1

## 2. BACKGROUND

A grand jury charged Young and his codefendant, Aqeelah Ngiesha Williams, in a fourteen-count Superseding Indictment. Dkt. No. 53. Count 1 charges conspiracy to commit wire fraud, 18 U.S.C. § 1349; Count 2 charges conspiracy to commit aggravated identity theft, 18 U.S.C. § 371; Counts 3 through 8 charge wire fraud, 18 U.S.C. §§ 1343 and 2; and Counts 9 through 14 charge aggravated identity theft, 18 U.S.C. §§ 1028A and 2.

The indictment alleges Young, often calling from jail, posed as a Department of Veterans Affairs ("VA") employee to obtain the financial-account information of seriously ill veterans in VA intensive-care units and their emergency contacts, falsely claiming that he needed the information to deposit a fictitious "Veteran's Stimulus" payment. Dkt. No. 53 ¶¶ 1, 7–9. The conspirators then used that information to access the victims' accounts and withdraw or transfer their money. *Id.* ¶¶ 5, 10. The indictment alleges that the scheme reached more than 60 victims and obtained over $8,000. *Id.* ¶ 11.

After a hearing, U.S. Magistrate Judge Paula L. McCandlis ordered Young detained pending trial. Dkt. Nos. 25, 28. Young has sought release several times without success. *See, e.g.*, Dkt. Nos. 50, 66, 98. On June 11, 2026, U.S. Magistrate Judge Brian A. Tsuchida granted Young's request to represent himself, Dkt. No. 123, and Young filed the *nine* motions now before the Court that same day, after the deadline for pretrial motions had passed, Dkt. Nos. 103, 122, 140.

ORDER - 2

## 3.  DISCUSSION

**3.1   Several of Young's motions are procedurally barred.**

The motions to dismiss and to suppress are procedurally barred. Such motions must be raised before the pretrial-motions deadline, and a motion filed afterward is untimely absent good cause. Fed. R. Crim. P. 12(b)(3), (c)(3); CrR 12(c)(1); *see United States v. Ghanem*, 993 F.3d 1113, 1120 (9th Cir. 2021); *United States v. Loo*, No. 2:24-cr-00072-LK, 2025 WL 1582283, at *2–6 (W.D. Wash. June 4, 2025) (denying untimely pretrial motions filed absent good cause). Young filed his motions after the deadline and made no effort to show good cause for the late filing. True, his separate motion to continue seeks to reset the pretrial motions deadline going forward, *see* Dkt. No. 135, but it relies only on the general ends-of-justice standard, never acknowledges that the deadline had already passed, doesn't attempt the showing that filing late requires. Moreover, his handwritten dismissal motion runs 21 pages (excluding the printed legal opinions) and was filed without prior approval to submit an over-length brief. CrR 12(b)(5). These defects would justify denial on their own. But because Young only recently began representing himself, the Court exercises its discretion to reach the merits of these motions, which require the same result.

Finally, Young represents in several of his filings that the Government agreed to, or did not oppose, the relief he seeks. *See, e.g.*, Dkt. No. 128 at 1 (asserting that "all parties agree"); Dkt. No. 135 (styling the motion as "unopposed"). To the contrary, the Government, which opposes each of these motions, says that neither Young nor his former counsel conferred with it before

ORDER - 3

filing. Dkt. No. 149 at 1 n.1. Candor to the Court is required of every litigant, and a defendant who elects to represent himself assumes that obligation no less than a lawyer would. *See Faretta v. California*, 422 U.S. 806, 834 n.46 (1975) ("the right of self-representation is not a license … not to comply with relevant rules of procedural and substantive law"). The Court expects Young to represent the parties' positions accurately in any future filing.

### 3.2    Young's detention motions are denied.

Young moves to reopen his detention, to set aside the detention order, and for release. Dkt. Nos. 127, 129, 131, 134. The Bail Reform Act permits pretrial detention only where no condition or combination of conditions will reasonably assure the defendant's appearance and the safety of the community. 18 U.S.C. § 3142(e)(1). "[L]iberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). The Government must prove dangerousness by clear and convincing evidence and risk of flight by a preponderance. *United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991). Unlike the drug and firearm offenses that trigger a statutory presumption of detention, the fraud and identity-theft offenses charged here carry no presumption; the Government bears the burden throughout. The Court reviews Judge McCandlis's detention order de novo. *United States v. Koenig*, 912 F.2d 1190, 1192–93 (9th Cir. 1990).

A detention hearing may be reopened only on a finding that "information exists that was not known to the movant at the time of the hearing and that has a

ORDER - 4

material bearing" on whether conditions of release exist. 18 U.S.C. § 3142(f). Young points to Dr. Wachsmuth's psychological evaluation. Dkt. Nos. 92, 134. But that evaluation is neither new nor material. It was prepared to assess Young's competency and found no diagnosed mental illness; it does not address—much less undermine—the findings that Young is a danger and a flight risk. And the underlying facts Young draws from it—his history of substance abuse and mental-health treatment—were known to him long before and were raised in his earlier motions. Information the defendant already had is not a basis to reopen.

Even setting the reopening standard aside, the factors in 18 U.S.C. § 3142(g) point decisively toward detention. Young is charged with a sustained fraud that preyed on gravely ill veterans and their families, and the indictment alleges that he committed much of it from jail. His history and characteristics weigh heavily in favor of detention, as the record reflects an extensive criminal history, outstanding arrest warrants (including one identifying him as an escape risk), the use of multiple names, dates of birth, and Social Security numbers, daily drug use, and no stable residence. And the danger is concrete—a defendant alleged to have defrauded vulnerable victims while already in custody has shown that incarceration alone has not stopped him—and those same facts establish a serious risk of flight. *See United States v. Torres*, 995 F.3d 695, 709 (9th Cir. 2021). The weight of the evidence is the least important factor and calls for no pretrial assessment of guilt, *United States v. Motamedi*, 767 F.2d 1403, 1408 (9th Cir. 1985), and it does not alter the conclusion.

Young's legal arguments do not change the result. His contention that the Constitution forbids detaining him to protect the community is foreclosed by

ORDER - 5

*Salerno*, which sustained the Act's authorization of detention based on community danger. 481 U.S. at 750–51. His complaint about the length of his pretrial detention overlooks that the delay mostly stems from his own requests, including his changes of counsel and his motion for a competency evaluation. And his reliance on the Fourteenth Amendment and *Griswold v. Connecticut* is misplaced in this federal prosecution, which the Bail Reform Act governs.

The Court therefore denies Young's detention motions.

### 3.3     Young's motions to dismiss the indictment are denied.

Young moves to dismiss the indictment. Dkt. Nos. 128, 133, 137, 162, 164. An indictment is sufficient if it alleges the elements of the offense, fairly informs the defendant of the charge, and allows him to plead double jeopardy; the question is the adequacy of the allegations, not whether the Government can prove its case. *United States v. Buckley*, 689 F.2d 893, 896–97 (9th Cir. 1982). The Court takes the indictment's allegations as true and confines itself to its four corners. *United States v. Boren*, 278 F.3d 911, 914 (9th Cir. 2002).

Young's main argument is that the indictment alleges no deprivation of a traditional property interest and so cannot survive *Ciminelli v. United States*, 598 U.S. 306 (2023), which rejected the "right to control" theory of wire fraud. The argument misreads the indictment. The Superseding Indictment does not rest on a right-to-control or intangible-information theory. It alleges a scheme to obtain "money and property"—the victims' funds—and alleges that Young did in fact obtain over $8,000 by accessing the victims' accounts and taking their money.

ORDER - 6

Money is one of the most basic forms of property, and *Ciminelli* is not implicated. Young's related assertion that the victims "ultimately lost nothing" because banks reimbursed them fares no better. That is an argument about proof, not pleading, *see Buckley*, 689 F.2d at 896–97, and the indictment alleges that Young obtained the victims' money in any event.

Young's remaining theories are quickly answered. His claim that the charged scheme will vary from the Government's proof at trial is premature; a variance is measured against the evidence at trial, not on the face of the indictment. *See* United States v. Adamson, 291 F.3d 606, 614–15 (9th Cir. 2002). His argument that the conduct is "really" bank fraud or some other offense disregards that the indictment alleges that Young defrauded the veterans and their emergency contacts, not their banks. Dkt. No. 53 ¶¶ 1, 5. Whether or not his conduct might also support a bank-fraud charge, that is not the offense the indictment charges or that the Government must prove. And his challenge to the aggravated-identity-theft counts—that they fail to allege a predicate offense—is contradicted by the indictment, which ties each count to the wire-fraud offenses charged in Counts 1 and 3 through 8 and identifies the specific account or card used. *Id.* ¶ 23.

Finally, the Court declines to adopt the report and recommendation that Young drafted for the Court's signature. Dkt. No. 136. A party does not write the Court's orders, and in any event the proposed recommendation reaches the wrong result.

The Court thus denies Young's motions to dismiss.

ORDER - 7

**3.4    Young's motion to suppress is denied.**

Young moves to suppress recordings of his jail telephone calls, arguing that the Government obtained them without a warrant. Dkt. No. 138. The motion fails because Young had no reasonable expectation of privacy in those calls. The Ninth Circuit has held that "any expectation of privacy in outbound calls from prison is not objectively reasonable," so recording them does not implicate the Fourth Amendment, and an inmate who is on notice that his calls are recorded consents to the recording. *United States v. Van Poyck*, 77 F.3d 285, 290–92 (9th Cir. 1996); *see United States v. Rushwam*, 275 F. App'x 684, 685 (9th Cir. 2008) (admission of recorded jail calls does not violate the Fourth, Fifth, or Sixth Amendment).

Young's contention that the recordings became unlawful because an outside agency obtained them for its own investigation does not change the analysis. Once there is no reasonable expectation of privacy in the calls, it does not matter who later obtains the recordings, or why. *Cf. United States v. Diaz*, No. CR 05-0167 WHA, 2006 WL 2792422 (N.D. Cal. Sept. 27, 2006) (declining to suppress recorded jail calls obtained by law enforcement for an investigation).

The Court therefore denies Young's motion to suppress.

**3.5    A hearing on the motions is unnecessary.**

Young requests oral argument and a hearing on several of his motions. The Court has resolved them on the parties' submissions, and neither oral argument nor an evidentiary hearing is required. Under this District's local rules, motions are decided without oral argument unless the Court orders otherwise, and a request

ORDER - 8

does not create an entitlement to it. CrR 12(b)(12). An evidentiary hearing is likewise unnecessary. The motions to dismiss present legal questions resolved on the face of the indictment; the suppression motion fails as a matter of law regardless of any factual development; and the detention motions turn on the absence of new, material information and on the § 3142(g) factors, not on any disputed fact a hearing could resolve. An evidentiary hearing on a motion to suppress is required only where "the *moving papers* allege facts with sufficient definiteness, clarity, and specificity to enable the trial court to conclude that contested issues of fact exist," *United States v. Howell,* 231 F.3d 615, 620 (9th Cir. 2000) (emphasis added), and Young alleges no facts which, if proved, would allow the Court to suppress.

### 4.  CONCLUSION

For these reasons, the Court DENIES Young's motions, Dkt. Nos. 127, 128, 129, 131, 133, 134, 137, 138, 162, 164, and DECLINES to adopt his proposed report and recommendation, Dkt. No. 136.

The Clerk is directed to send a copy of this Order to Young.

Dated this 24th day of June, 2026.

Jamal N. Whitehead
United States District Judge

ORDER - 9